UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTTSDALE INSURANCE COMPANY,

Plaintiff,

v.

WILLOW TREE DEVELOPMENT LTD.,
HARRISON WILLS and ALIZA WILLS,

Defendants.

**COMPLAINT FOR
DECLARATORY JUDGMENT**

Civil Action No. _17-401_

Plaintiff SCOTTSDALE INSURANCE COMPANY ("Scottsdale") by its attorneys, Goldberg Segalla LLP, for its complaint herein, alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is an action for a declaratory judgment pursuant to 28 U.S.C. §2201 et. seq. and Rule 57 of the Federal Rules of Civil Procedure.

2.      The instant action for declaratory judgment seeks a judicial determination regarding whether Scottsdale must provide insurance coverage, including defense and/or indemnification, to WILLOW TREE DEVELOPMENT LTD. ("Willow Tree") for a lawsuit filed against it by HARRISON WILLS and ALIZA WILLS (collectively "Wills" or "Underlying Plaintiffs").

3.      Scottsdale is entitled to a declaration that it has no duty to defend or indemnify Willow Tree in the lawsuit filed by Wills because Willow Tree breached conditions precedent to coverage under all policies of insurance issued to it by Scottsdale, namely by failing to provide timely notice of the underlying occurrence, offense, claim or suit against it until after a Default Judgment was entered.

5945900.2

4.      Scottsdale is further entitled to a declaration that it has no duties or obligations to HARRISON WILLS and/or ALIZA WILLS ("Wills" or "Underlying Plaintiffs") because they failed to exercise their independent right and duty to notify Scottsdale of their claims against Willow Tree.

5.      In the alternative, Scottsdale is entitled to a declaration that it has no duty defend or indemnify Willow Tree in an underlying lawsuit, nor must Scottsdale satisfy only Judgment, because: (a) the claims asserted against Willow Tree are not within the purview of coverage provided by Scottsdale; and/or (b) the claims asserted against Willow Tree are barred from coverage under one or more policy exclusion.

6.      Scottsdale is further entitled to reimbursement from Willow Tree for the defense costs and attorney fees incurred for defending Willow Tree in the Underlying Plaintiffs' lawsuit to date.

7.      Scottsdale has no adequate remedy at law.

8.      The claims at issue in this action constitute a justiciable controversy.

## THE PARTIES

9.      Scottsdale is a corporation existing under the laws of Ohio, with its principal place of business in Arizona, which is duly authorized to engage in the business of selling insurance in the State of New York.

10.     Willow Tree is a domestic corporation duly organized and existing under the laws of the State of New York, maintaining its offices in the State of New York.

11.     Underlying Plaintiffs were and are residents of the town of Clarkstown, County of Rockland, State of New York.

5945900.2

### JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §1332 in that it is a civil action between parties of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

13.     Venue in this district is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district, and the underlying action was brought in this district.

### FACTS

**A.     The Underlying Allegations Against Willow Tree**

14.     The Underlying Plaintiffs' lawsuit is styled as *Harrison Wills and Aliza Wills v. Willow Tree Development Ltd, et al*, and is currently pending in the Supreme Court of the State of New York under Index Number 34277/2015 ("Underlying Action").   A copy of the Underlying Complaint is attached as **Exhibit A**.

15.     The Underlying Complaint alleges that Wills contracted with Willow Tree, as general contractor and construction manager, to develop, design and construct renovations to their residential property, located at 11 White Birch Court in New City, New York. *See* **Ex. A** at ¶¶ 1, 5 11.

16.     The renovations were extensive and included the construction of an addition comprised of a room, a game room and new roof, the construction and installation of stucco siding throughout the entire property and renovations to the existing roof on the property. *See* **Ex. A** at ¶¶ 16-18.

17.     Underlying Plaintiffs allege that Willow Tree, as general contractor, entered into trade subcontracts with other Defendants in the Underlying Action to construct the renovations. *See* **Ex. A** at ¶¶ 11-13.

18.     The Underlying Complaint alleges that there were serious design and construction defects in the renovations, resulting in water infiltration, mold, mold related illness and structural instabilities that require extensive repairs. *See* **Ex. A** at ¶ 1.

19.     More specifically, Underlying Plaintiffs allege the following construction defects:

- Improper construction of the flat roof deck which pitched toward the Property rather than away from it;

- Improper installation of the roof deck railings wherein the screws that held the railing posts in place were screwed into the roof deck breaching the rubberized membrane water bather.

- Improper installation of the roof deck's rubberized membrane in that it did not extend beyond the roofs perimeter.

- Faulty application of the stucco siding in that it trapped water behind the stucco in several locations.

- Improper renovation and construction of the roof elements of the Renovations including, but not limited to, failure to construct an overhang that would route water away from the Property.

*See* **Ex. A** at ¶ 21.

20.     Plaintiffs assert that the foregoing construction defects resulted from the failure of Willow Tree and its trade subcontractors to properly perform and supervise the renovations. *See* **Ex. A** at ¶ 22.

21.     The Complaint asserts the following Causes of Action against Willow Tree specifically: (1) Breach of Express Warranty;  (2) Breach of Implied Warranty; and (3) Breach of Contract. *See* **Ex. A** at ¶¶ 23-39.

**B.     The Default Judgment Against Willow Tree**

22.     Willow Tree was served with the Underlying Complaint through the New York Secretary of State on or about October 19, 2015.

23.     Willow Tree did not notify Scottsdale of the Underlying Action upon receipt of the Underlying Complaint.

24.     Willow Tree did not file an Answer to the allegations in the Underlying Complaint nor did it otherwise appear in the Underlying Action.

25.     On or about January 28, 2016, Underlying Plaintiffs served Willow Tree with a copy of their Motion for Default Judgment.  A copy of the Motion for Default Judgment is attached as **Exhibit B**.

26.     Willow Tree did not notify Scottsdale of the Motion for Default Judgment.

27.     Willow Tree did not oppose the Motion for Default Judgment nor attempt to file an Answer or otherwise appear in the Underlying Action.

28.     On or about March 9, 2016, the Honorable Robert M. Berliner of the Supreme Court of the State of New York, County of Rockland heard the Wills' Motion for Default and marked same as granted without opposition.  A copy of this Order is attached as **Exhibit C**.

29.     On or about March 11, 2016, Willow Tree was served with a copy of a Notice of Settlement of Order and Order/Judgment, including a proposed Order which, once signed, would enable Wills to recover $248,000 from Willow Tree with interest, resulting in a total sum of $459,459.07.

30.     On or about March 29, 2016, Judge Berliner executed the Order for a judgment against Willow Tree in the amount of $248,000 plus interest, *i.e.*, at total judgment of $459,459.07. A copy of the Order is attached as **Exhibit D**.

5945900.2

31.     On or about May 9, 2016, Willow Tree filed a Motion to Vacate the Default Judgment pursuant to New York CPLR §5015(a).

32.     On or about July 21, 2016, the Judge Berliner denied Willow Tree's Motion to Vacate the Default Judgment.

**C.      Scottsdale's First Notice of the Underlying Action**

33.     Willow Tree first notified Scottsdale of the Underlying by an ACORD General Liability Notice of Occurrence/Claim Form dated March 15, 2016, which was sent by the insured's broker on March 16, 2016.

34.     The ACORD notice reports the Date of Loss as September 21, 2006, which is the date Willow Tree represents it completed renovations to the Underlying Plaintiffs' home.

35.     The ACORD notice attached the Notice of Settlement of Order, indicating the Default Judgment entered against Willow Tree due to its failure to Answer or otherwise appear in the Underlying Action.

36.     Underlying Plaintiffs have never independently notified Scottsdale of their claims and/or the Underlying Action.

37.     Thus, Scottsdale's first notice of the Underlying Action occurred subsequent to the Default Judgment's entry.

**D.      The Scottsdale Policies**

38.     Scottsdale issued to Willow Tree & Mada Construction, Inc. the following insurance policies, which provide Commercial General Liability ("CGL") coverage:

- Policy No. CLS1085366, for the December 30, 2004 to December 30, 2005 policy period (the "2005 Policy");

- Policy No. CLS1218986, for the December 30, 2005 to December 30, 2006 policy period (the "2006 Policy");

- Policy No. CLS1333115, for the December 30, 2006 to December 30, 2007 policy period (the "2007 Policy");

- Policy No. CLS1452760, for the December 30, 2007 to December 30, 2008 policy period (the "2008 Policy");

39.    Willow Tree reports the Date of Loss as September 21, 2006, thereby implicating the 2006 Policy in particular.

40.    The 2006 Policy contains the CG 00 01 (12-04) CGL coverage form, which contains the following relevant Insuring Agreement ("Insuring Agreement"):

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly

provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

5945900.2

      **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

41.  The 2006 Policy contains the following relevant exclusions from coverage ("business risk exclusions"):

    **2.**    **Exclusions**

    This insurance does not apply to:

              * * *

    **b.**    **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      **(1)**    That the insured would have in the absence of the contract or agreement; or

      **(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party

other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

j.    **Damage To Property**

* * *

"Property damage" to:

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

5945900.2

**k.**   **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**   **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

42.   The 2006 Policy contains the following relevant Conditions ("Conditions"):

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

5945900.2

**(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

43.   The 2006 Policy also contains the following relevant Endorsement ("Exterior Insulation and Finish Systems Exclusion"):

### EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**   This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.**   The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.**   "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used

on the part of that structure containing that component, fixture or feature.

**B.**   The following definition is added to the Definitions Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.**   A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.**   The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.**   A reinforced or unreinforced base coat;

**4.**   A finish coat providing surface texture to which color may be added; and

**5.**   Any flashing, caulking or sealant used with the system for any purpose.

44.   The 2005 Policy contains identical or substantially similar language as the 2006 Policy's Insuring Agreement, business risk exclusions, Conditions and Definitions.

45.   In addition, the 2005 Policy contains the Endorsement:

**DESIGNATED WORK EXCLUSION—EXTERIOR INSULATION AND FINISH SYSTEMS**

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCT/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" described as:

1.    The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system.

2.    Any work or operation with respect to any exterior component, fixture or feature of any structure if any "exterior insulation and finish system" is used on any part of that structure.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

1.    A rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and

2.    The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and

3.    A reinforced base coat; and

4.    A finish coat providing surface texture and color.

46.    The 2007 Policy contains identical language as the 2006 Policy's Insuring Agreement, business risk exclusions, Conditions, Definitions and Exterior Insulation and Finish Systems Exclusion.

47.    The 2007 Policy also contains the Continuing or Ongoing Damage Exclusion Endorsement ("Continuing or Ongoing Damage Exclusion"), which provides as follows:

### CONTINUING OR ONGOING DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

5945900.2

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to subsection 2. Exclusions of SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to "property damage" when any of the following apply:

**Continuing Or Ongoing Damage**

1.    The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2.    The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

48.    The 2008 Policy contains identical or substantially similar language as the 2006 Policy's Insuring Agreement, business risk exclusions, Conditions, Definitions and Exterior Insulation and Finish Systems Exclusion.

49.    The 2008 Policy contains substantially similar language as the 2007 Policy's Continuing or Ongoing Damage Exclusion and provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CONTINUING OR ONGOING DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM—COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR

The following exclusion is added to subsection **2. Exclusions** of **SECTION I—COVERAGE:** This insurance does not apply to "property damage" when any of the following apply:

16

**Continuing Or Ongoing Damage**

1. The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2. The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

50.     The 2008 Policy also contains Form UTS-246s (9-05), which includes the following relevant Amendatory Endorsement:

## FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     The following exclusion is added to Paragraph 2., Exclusions of Section I—Coverage A. Bodily Injury And Property Damage Liability:

2.     **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a.     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

17

b.   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

51.   All Policies contain the Known Injury or Damage Exclusion Endorsement, which provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**KNOWN INJURY OR DAMAGE EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) and paragraph 2., Exclusions of COVERAGE     B—PERSONAL     AND ADVERTISING INJURY LIABILITY (Section I—Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising from an "occurrence," or "personal injury" or "advertising injury" arising from an offense which was known to any "insured" before the effective date of this policy regardless of whether there is repeated or continued exposure during the policy period or whether the injury or damage continues during the policy period.

For the purposes of this exclusion:

5945900.2

(a)   Injury or damage is known to any "insured" when any "insured" is aware or reasonably should be aware that the injury or damage has occurred; and

(b)   Knowledge of "bodily injury" or "property damage" arising from an "occurrence" or "personal injury" or "advertising injury" arising from an offense constitutes knowledge of all injury or damage caused by the same "occurrence" or offense.

**E.   Scottsdale's Coverage Denial**

52.   By letter dated March 31, 2016, Scottsdale advised Willow Tree that it failed to provide notice of the Underlying Action until after the Motion for Default was granted, despite the Policy Conditions requiring an insured to notify The Company as soon as possible.

53.   Despite the apparent breach of the Policy Conditions, Scottsdale retained defense counsel to attempt to vacate the Default Judgment.

54.   The March 31, 2016 letter also reserved Scottsdale's rights to deny coverage on grounds that the Underlying Action asserted claims that fell outside the purview of coverage and/or were barred from coverage under one or more exclusion.

55.   By letter dated April 15, 2016, Willow Tree was advised that there is no coverage available for the Underlying Action due to Willow Tree's breach of the Policy Conditions requiring timely notice of the occurrence, offense, claim or suit.

56.   The April 15, 2016 letter further incorporated by reference Scottsdale's coverage defenses asserted in the March 31, 2016 letter, and advised that Scottsdale would continue to provide a courtesy defense to Willow Tree.

5945900.2

57.     By letter dated January 3, 2017, Scottsdale advised Willow Tree of its complete denial of coverage due to Willow Tree's failure to provide timely notice of the occurrence, offense, claim or suit.

58.     The January 3, 2017 letter disclaimed coverage on grounds that the claims asserted against Willow Tree both fell outside the purview of coverage and were excluded pursuant to numerous policy exclusions.

## AS AND FOR A FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT
## (AGAINST WILLOW TREE)

59.     Scottsdale repeats and reiterates each and every allegation set forth in paragraphs "1" through "58" as if fully set forth herein at length.

60.     Defendant Willow Tree failed to provide notice of the underlying occurrence, offense, claim or suit, including the allegations asserted in the Underlying Complaint, as soon as practicable in contravention of conditions precedent to coverage.

61.     Defendant Willow Tree also failed to notify Scottsdale upon receipt of a Motion for Default based on Willow Tree's failure to Answer the allegations asserted in the Underlying Complaint or otherwise appear in the Underlying Action.

62.     Scottsdale was not notified of the subject claims or the Underlying Action until after a Default Judgment was entered against Willow Tree.

63.     All in all, Scottsdale did not receive notice until March 16, 2016, nearly 5 months after the Underlying Complaint was served on Willow Tree, which is untimely as a matter of law.

5945900.2

64.    Due to Willow Tree's failure to provide timely notice and the Default Judgment, which could not be successfully vacated, Scottsdale's rights to investigate and/or defend the claims against Willow Tree are irreparably prejudiced.

65.    Scottsdale is therefore entitled to a declaration that it has no duty to defend or indemnify Willow Tree for the claims asserted in the Underlying Action by virtue of Willow Tree's failure to comply with conditions precedent to coverage, namely its duty to provide timely notice of the underlying occurrence, offense, claim or suit.

66.    Scottsdale is further entitled to reimbursement from Willow Tree for the defense costs and attorney fees incurred for defending Willow Tree in the Underlying Plaintiffs' lawsuit to date.

## AS AND FOR A SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT

### (AGAINST WILLS)

67.    Scottsdale repeats and reiterates each and every allegation set forth in paragraphs "1" through "66" as if fully set forth herein at length.

68.    Defendants Wills had an independent right and obligation to notify Scottsdale directly regarding their claims and/or Underlying Action against Willow Tree.

69.    Wills, to date, have never notified Scottsdale of their claims and/or Underlying Action against Willow Tree.

70.    Therefore, under settled New York law, Scottsdale is entitled to a declaration that it has no obligation to remit payment to Wills in satisfaction of their Default Judgment against Willow Tree due to Wills' failure to independently notify Scottsdale of their claims and/or Underlying Action against Willow Tree.

5945900.2

## AS AND FOR A THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT

## (AGAINST WILLOW TREE AND WILLS)

71.     Scottsdale repeats and reiterates each and every allegation set forth in paragraphs "1" through "70" as if fully set forth herein at length.

72.     The claims asserted against Willow Tree for the replacement and remediation of defective renovations are not covered under any policy of insurance issued to Willow Tree by Scottsdale.

73.     The claims asserted by Underlying Plaintiffs do not constitute "property damage" within the meaning of the Scottsdale policies' Insuring Agreements.

74.     The claims asserted by Underlying Plaintiffs do not allege an "occurrence" within the meaning of the Scottsdale policies' Insuring Agreements.

75.     The factual allegations and causes of action asserted against Willow Tree in the Underlying Action are contractual in nature.

76.     The Underlying Complaint vaguely does not allege or seek damages for "bodily injury".

77.     Any alleged "mold related illness" did not occur until after Scottsdale ceased to provide insurance coverage to Willow Tree.

78.     Scottsdale is entitled to a declaration that it does not have a duty to defend or indemnify Willow Tree for the allegations asserted in the Underlying Action because the claims against it do not allege "bodily injury" or "property damage" caused by an "occurrence" during the policy period, as is required by the policies' respective Insuring Agreements.

5945900.2

79.     Scottsdale is further entitled to reimbursement from Willow Tree for the defense costs and attorney fees incurred for defending Willow Tree in the Underlying Plaintiffs' lawsuit to date.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT
## (AGAINST WILLOW TREE AND WILLS)

80.     Scottsdale repeats and reiterates each and every allegation set forth in paragraphs "1" through "79" as if fully set forth herein at length.

81.     The Underlying Action asserts claims that are contractual in nature and allege that Willow Tree's work product was defective, including with regard to the stucco and/or sheetrock siding that was installed throughout the entirety of the property.

82.     Exclusion 2.b. precludes coverage for "property damage" for which the insured is obligated to pay because of an assumption of liability in a contract or agreement.

83.     Underlying Plaintiffs' claims against Willow Tree are barred from coverage under Exclusion 2.b., because they allege construction defects, which constitute contractual liability claims under New York law.

84.     Exclusion 2.j.(5) precludes coverage for "'property damage' to...that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

85.     Underlying Plaintiffs' claims against Willow Tree are barred from coverage under Exclusion 2.j.(5) because the allegations assert damage to real property on which Willow Tree and Willow Tree's subcontractors performed, and the damage arising out of those operations.

5945900.2

86.     Exclusion 2.j.(6) precludes coverage for "property damage" to "that particular part of any property that must be replaced because 'your work' was incorrectly performed on it."

87.     Underlying Plaintiffs' claims against Willow Tree are barred from coverage under Exclusion 2.j.(6) because the alleged damage results from, among other things, Willow Tree's improper supervision and performance of its work.

88.     Exclusion 2.k. precludes coverage for property damage" arising out of "your product" or any part of it.

89.     "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by…[y]ou."

90.     Underlying Plaintiffs' claims against Willow Tree are barred from coverage under Exclusion 2.k. because the subject renovations constitute a good or product that Willow Tree contracted to design, manufacture, sell, supply and/or install.

91.     Exclusion 2.l. precludes coverage for "property damage" to "'your work arising out of it or any part of it and included in the 'products-completed operations hazard'".

92.     Willow Tree's work for defendant Wills was completed at the time of the alleged damages set forth in the underlying complaint.

93.     Underlying Plaintiffs' claims against Willow Tree are barred from coverage under Exclusion 2.l. because they allege construction defects to the work performed and completed by Willow Tree.

94.     The Exterior Insulation and Finish Systems Exclusion precludes coverage for "property damage" arising out of the "design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any 'exterior insulation and finish system.'"

95.     Underlying Plaintiffs' claims against Willow Tree are barred from coverage under the Exterior Insulation and Finish Systems Exclusion because the claims arise out of defective stucco and/or sheetrock siding, which constitutes an "exterior insulation and finish system" within the meaning of the policy(ies), throughout the entirety of their property.

96.     The Known Injury or Damage Exclusion bars coverage for any claims involving "bodily injury" or "property damage" arising from an "occurrence" that was known to the insured prior to the Policies' effective date, regardless whether there is repeated or continued exposure during the policy period or the injury continues during the policy period.

97.     Willow Tree knew or reasonably should have known of the damage complained of by Underlying Plaintiffs prior to the inception date of any or all Policies issued by Scottsdale, and therefore coverage is barred.

98.     The Continuing or Ongoing Damage Exclusion, applicable to the 2007 Policy and 2008 Policy, precludes coverage for "property damage" that "first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy."

99.     The Continuing or Ongoing Damage Exclusion applies to all "property damage" arising from an "occurrence" that   "first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy".

100.     To the extent that Underlying Plaintiffs' claims allege "property damage" caused by an "occurrence", which Scottsdale disputes, the claims are barred under the 2007 Policy and 2008 Policy as the damage occurred, began to occur, or is alleged to have occurred or been in the process of occurring, in whole or in part, prior to the respective inception dates.

5945900.2

101.     The 2008 Policy's Fungi or Bacteria Exclusion precludes coverage for "bodily injury" or "property damage" caused by "fungi" or bacteria.

102.     Underlying Plaintiffs' claims related to mold exposure and/or mold-related illness did not occur during the effective dates of any insurance policy issued by Scottsdale, and would therefore not be entitled to coverage under any circumstance.

103.     To the extent it is found that Underlying Plaintiffs' claims related to mold exposure and/or mold-related illness occurred during the 2008 Policy's effective period, coverage is barred pursuant to the Fungi or Bacteria Exclusion.

104.     Scottsdale is entitled to a declaration that it does not have a duty to defend or indemnify Willow Tree for the allegations asserted in the Underlying Action because the claims against it are each barred under one or more Policy exclusion.

105.     Scottsdale is entitled to reimbursement from Willow Tree for the defense costs and attorney fees incurred for defending Willow Tree in the Underlying Plaintiffs' lawsuit to date.

**WHEREFORE,** Scottsdale demands judgment finding and declaring the rights of the parties as follows:

1.     That Scottsdale has no duty to defend and/or indemnify Willow Tree for the claims asserted against it by Wills in the Underlying Action due to Willow Tree's failure to comply with conditions precedent to coverage, namely its duty to provide timely notice to Scottsdale of the occurrence, offense, claim or suit.

2.     That Scottsdale does not now, nor will it ever have, an obligation to indemnify Wills in satisfaction of their Default Judgment against Willow Tree due to Wills' failure to independently notify Scottsdale of their claims and/or Underlying Action against Willow Tree.

5945900.2

3.  That Scottsdale has no duty to defend and/or indemnify Willow Tree, nor does it have any obligations to Wills relative to the Underlying Action because the claims asserted therein do not fall within the coverage afforded to Willow Tree by Scottsdale.

4.  That Scottsdale has no duty to defend and/or indemnify Willow Tree, nor does it have any obligations to Wills relative to the Underlying Action because the claims asserted therein are barred from coverage under one or more policy exclusion.

5.  That Scottsdale is entitled to reimbursement from Willow Tree for the defense costs and attorney fees incurred for defending Willow Tree in the Underlying Plaintiffs' lawsuit to date.

6.  That the Court grant Scottsdale such other and further relief as it deems just and proper.

Dated: Garden City, New York
       January 19, 2017

                                    GOLDBERG SEGALLA LLP


                                    Joanna M. Roberto
                                    **Attorneys For**
                                    **Scottsdale Insurance Company**
                                    200 Garden City Plaza, Suite 520
                                    Garden City, NY 11530-3203
                                    Phone: 516.281.9800

5945900.2